IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY as subrogee of EATON CORP., <br><br> Plaintiff, <br><br> -vs- <br><br> TRANSPLACE TEXAS, L.P., <br><br> Defendants. | CASE NO. 1:24-cv-00899 <br><br> JUDGE DAN AARON POLSTER <br><br><br> **DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Uber Freight US LLC, formerly known as Transplace Texas, L.P. ("Transplace") respectfully requests that the Court dismiss Plaintiff Zurich American Insurance Company as subrogee of Eaton Corp.'s ("Plaintiff") Complaint for failure to state a claim upon which relief can be granted. Plaintiff's negligence claims against Transplace, a transportation broker, are preempted completely by Federal Law pursuant to the Federal Aviation Administration Authorization Act, 49 U.S.C. §14501(b) and (c)(1) (the "FAAAA"). Additionally, Plaintiff's contract claim against Transplace fails because there is no allegation that Transplace had a contract obligation that was breached. In the Complaint, Plaintiff conflates motor carrier and broker, in that Plaintiff also alleges that Transplace was a motor carrier. Transplace denies that it acted as a motor carrier, and any claims against Transplace as a motor carrier fail. However, even if Transplace acted as a motor carrier, any state law claims against a motor carrier are also preempted completely by 49

24560475 v1

U.S.C. § 14706 (the "Carmack Amendment"). A brief in support of this motion is attached hereto and incorporated herein.

| | |
|---|---|
| **OF COUNSEL:**<br><br>**BENESCH, FRIEDLANDER,**<br>**COPLAN & ARONOFF LLP** | Respectfully submitted,<br><br>*/s/ Clare R. Taft*<br>ERIC LARSON ZALUD (0038959)<br>CLARE R. TAFT (0076570)<br>**BENESCH, FRIEDLANDER, COPLAN &**<br>**ARONOFF LLP**<br>127 Public Square, Suite 4900<br>Cleveland, Ohio  44114<br>Telephone:  (216) 363-4500<br>Facsimile:  (216) 363-4588<br>Email:   ezalud@beneschlaw.com<br>            ctaft@beneschlaw.com<br><br>*Attorneys for Defendant Uber Freight US LLC*<br>*(formerly known as Transplace Texas, L.P.)* |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY as subrogee of EATON CORP., <br><br>Plaintiff, <br><br>-vs- <br><br>TRANSPLACE TEXAS, L.P., <br><br>Defendants. | CASE NO. 1:24-cv-00899 <br><br>JUDGE DAN AARON POLSTER <br><br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

I.     **FACTS AND BACKGROUND**

This action arises out of the interstate shipment of four battery cabinets (the "Cargo") from Carol Stream, Illinois to Albuquerque, New Mexico. (Dkt. 1, Compl. ¶¶10-13.) Plaintiff alleges that Eaton Corporation ("Eaton") "instructed defendant Transplace Texas LP to carry the shipment" from Illinois to New Mexico and that "[t]he shipment was picked up by Transplace Texas LP without exception on or about July 14, 2022." (*Id*. ¶13.) Plaintiff alleges that the Cargo arrived at its destination "in a damaged condition" and that the bill of lading noted the damage. (*Id*. ¶14.) Plaintiff claims that Eaton reported the damage to Transplace via an email on August 5, 2022. (*Id*. ¶15.) Plaintiff alleges that the Cargo was unusable, and that Plaintiff paid Eaton's claim in the amount of $164,851.50. (*Id*. ¶¶20, 22.)

On or about May 21, 2024, Plaintiff filed the Complaint in this action. The Complaint alleges the following claims: (1) Negligence (Compl. ¶¶25-28); (2) Gross Negligence (*Id*. ¶¶29-31); (3) Breach of Contract (*Id*. ¶¶32-39); (4) Breach of Contract of Common Carriage (*Id*. ¶¶40-46); and (5) Violation of 49 U.S.C. §14704 (*Id*. ¶¶47-50).

24560475 v1

For the reasons set forth below, Plaintiff's claims against Transplace are preempted completely by applicable federal law or fail to state a claim upon which relief may be granted. First, Plaintiff's state law negligence claims, for negligence and gross negligence, against Transplace, a transportation broker, are preempted by the Federal Aviation Administration Authorization Act, 49 U.S.C. §14501(b) and (c)(1) (the "FAAAA") because the FAAAA preempts extra-contractual claims against brokers. Second, Plaintiff's breach of contract claim against Transplace is not ripe. Plaintiff did not alleged that Transplace has an active contractual obligation that Transplace could perform or fail to perform. Third, to the extent that Plaintiff alleged claims against Transplace as a motor carrier, which such claims Transplace denies, those claims are preempted under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §14706 (the "Carmack Amendment"), as the Carmack Amendment preempts all state common law claims against motor carriers and is the exclusive means for recovery in any lawsuit brought against a motor carrier for loss or damage to goods in interstate commerce.[1] Finally, Transplace is not a motor carrier and therefore any claims premised on Transplace being a motor carrier fail

---

[1] In the Complaint, Plaintiff conflates broker and motor carrier. Plaintiff alleges clearly that Transplace acted as a transportation broker, arranging for the transportation of the Cargo, through "agents" and citing the Transportation Agreement between Eaton and Transplace, whereby Transplace contracted with Eaton to provide Eaton transportation brokerage services, *as a broker*. (Compl. ¶¶26, 32-39, 41; Compl. Exhibit N.) However, Plaintiff also claims that Eaton instructed Transplace to "carry the shipment" and that the "shipment was picked up by Transplace" (Compl. ¶44; *see* ¶¶3, 11, 51-52.) Transplace is a transportation broker, and denies that it acted as a motor carrier. The Transportation Agreement identifies Transplace as a BROKER, that will "arrange for motor carrier service to SHIPPER [Plaintiff] for the transportation of general commodities and represents that it is a ***duly authorized broker*** in interstate commerce…" (Compl. Exhibit N, emphasis added.) Transplace cannot be both broker and motor carrier. *See Ripley v. Long Distance Relocation Servs, LLC*, No. CCB-19-0373, 2019 WL 5538343, at n. 8 (D.Md. Oct. 25, 2019) ("According to 49 C.F.R. § 371.2(a). 'motor carriers ... are not brokers ... when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport.' ")

to state a claim. Thus, the Court must dismiss Plaintiff's Complaint against Transplace.LAW AND ARGUMENT

    **A.**     ***Standard Of Review***

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. On a Rule 12(b)(6) motion to dismiss, the court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. *Jackson v. Bellsouth Telecomms.,* 372 F.3d 1250, 1262 (11th Cir. 2004); *United States v. Pemco Aeroplex, Inc.,* 195 F.3d 1234, 1236 (11th Cir.1999) (en banc). The court favors the plaintiff with all reasonable inferences from the allegations in the complaint. *Stephens v. Dep't of Health & Human Servs.,* 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true"). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Establishing the plausibility of a complaint's allegations is a two-step process. *See id.*, 556 U.S. at 679. First, a court should "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Then, a court should "assume the[ ] veracity" of "well pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement to relief." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. at 678 (internal citations omitted).

**B.** ***The Court Must Dismiss the Complaint Against Transplace as Preempted by the FAAAA.***

Plaintiff alleges that Transplace acted as a broker, arranging for the transportation of the Cargo. (Compl. ¶¶26, 32-39, 41, Exhibit N.) Plaintiff alleges that Transplace's actions as a broker are the basis for Plaintiff's claims. (*See id*.) These claims are preempted by the FAAAA, which preempts *all state law claims* other than those for breach of contract against transportation brokers, such as Transplace. The FAAAA provides, in pertinent part:

> Except as provided in paragraphs (2) and (3), a State, political subdivision of a State or political authority of two or more States may not enact or enforce a law, regulations, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. §14501(c)(1). Congress deregulated the trucking industry in 1980. *S.C. Johnson & Son, Inc. v. Transp. Corp. of Am., Inc*., 697 F.3d 544, 548 (7th Cir. 2012) (citing the Motor Carrier Act of 1980, Pub.L. No. 96-296, 94 Stat. 793). This did not, however, stop states from enacting and enforcing laws affecting prices, routes, and services provided by motor carriers. So, on August 23, 1994, the U.S. Congress enacted the FAAAA. The FAAAA amended the Interstate Commerce Act, effective January 1, 1995. Pub. L. No. 103-305, 108 Stat. 1569, 1607 (1994). Among other things, the FAAAA preempts expressly a wide variety of state and local regulations and state law claims affecting motor carriers. *See* Section 601 of the FAAAA (originally codified at 49 U.S.C. § 11501(h)). Further, on December 29, 1995, the U.S. Congress enacted the Interstate Commerce Commission Termination Act (the "ICCTA"), effective January 1, 1996. Pub. L. No. 104-88, 109 Stat. 803, 804. Section 103 of the ICCTA recodified former 49 U.S.C. § 11501(h) as 49 U.S.C. § 14501(c). In addition, the ICCTA also expanded federal preemption under the FAAAA to include preemption of claims not only against motor carriers

4

but also against transportation brokers in particular. H.R. Rep. No. 311, 104th Cong., 1st Sess. 119-20 (1995), reprinted in 1995 U.S.C.C.A.N. 793, 831-32.

Courts across the country hold *uniformly* that the FAAAA preempts all extra-contractual claims against brokers. This Court recognizes the FAAAA's broadly preemptive effect. *Lee v. Werner Enterprises, Inc.*, No. 3:22 cv 91, 2022 WL 16695207, at *3 (N.D. Ohio Nov. 3, 2022) (dismissing plaintiff's tort law claims against the defendant transportation broker as a being preempted by the FAAAA); *Creagan v. Wal-Mart Transportation*, LLC, 354 F. Supp. 3d 808, 814 (N.D. Ohio 2018) (holding that Ohio negligent hiring claims against transportation broker to be preempted by the FAAAA).

The Eleventh Circuit held recently that the FAAAA preempts negligence claims against brokers. *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1264, 1267 (11th Cir. 2023). In *Aspen*, following theft of insured's cargo by thief posing as carrier registered with transportation broker, the plaintiff insurer brought Florida negligence claims against the defendant broker, alleging that the broker negligently selected the motor carrier to transport insured's cargo. The court ruled in favor of the broker, granting the broker's motion to dismiss for failure to state a claim, based on federal FAAAA preemption grounds. The Eleventh Circuit affirmed the dismissal. *Id.* The plaintiff insurer argued that its negligent selection claims fell within the FAAAA's "safety exception," which provides, that the preemption clause, " 'shall not restrict the safety regulatory authority of a State with respect to motor vehicles.' " *Id.* at 1268 (quoting 49 U.S.C. § 14501(c)(2)(A)). The court found that "[f]or Aspen's claims to fall within the safety exception, (1) the negligence standard must constitute an exercise of Florida's "safety regulatory authority," and (2) that authority must have been exercised "with respect to motor vehicles." *Id.* The court found that theft of cargo in interstate transit had only an attenuated,

5

indirect connection with motor vehicles. *Id.* Thus, the claims were not "with respect to motor vehicles," and did not fall within safety exception to federal preemption. *Id*. at 1270.

Similarly, the Ninth Circuit held that the FAAAA preempts negligence claims against brokers, with the exception of "the safety regulatory authority of a State with respect to motor vehicles." *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1020 (9th Cir. 2020). In *Miller*, the plaintiff brought suit against a transportation broker for negligent selection of a motor carrier, which caused personal injury to the plaintiff. *Id.* Although the Ninth Circuit ultimately held that the plaintiff's personal injury claim fell under the safety exception, the Ninth Circuit made clear that common law tort claims, which "demand[] that an individual or entity exercise ordinary care" are "related to" broker services, such that they are preempted by the FAAAA. *Id*. at 1023-25. Here, Plaintiff's claims for damage to the Cargo in transit do not fall within the so-called "safety-exception" contemplated by the FAAAA. Plaintiff alleges damage to the Cargo in transit, rather than a highway accident that would be the subject of a state regulatory authority.

The Seventh Circuit joined the Eleventh Circuit with its decision in *Ye v. GlobalTranz Enterprises, Inc.,* F.4th 453, 460 (7th Cir. 2023) ("[i]n short, a common law negligence claim enforced against a broker is not a law that is "with respect to motor vehicles"). In addition to aligning with the Eleventh Circuit's conclusions in *Aspen*, the Seventh Circuit in *Ye* also found that the statutory language of the safety exception in relation to the rest of 49 U.S.C. § 14501 demonstrates the textual reasons why brokers are not included within FAAAA's safety exception. These include Congress' choice to use "with respect to" instead of "related to" and the omission of a safety exception from § 14501(b), which is expressly meant to address brokers. *Id.* Several district courts agree. *See*, *e.g.*, *Honore v. M/V MSC Maria Elena*, No. 21CV04620 (EP) (JSA), 2022 WL 16948965, at *6 (D.N.J. Nov. 14, 2022) ("Accordingly, Siaci's state law-based

6

negligence, breach of bailment, and conversion claims against West End are preempted by the FAAAA."); *Uhrhan v. B&B Cargo, Inc.*, No. 4:17-CV-02720-JAR, 2020 WL 4501104, at *4 (E.D. Mo. Aug. 5, 2020) ("[T]he Court agrees that Plaintiffs' negligent brokering claims relate to the services of [defendant] and falls within the scope of 49 U.S.C. § 14501(c)(1)."); *Gillum v. High Standard, LLC*, No. SA-19-CV-1378-XR, 2020 WL 444371, at *5 (W.D. Tex. Jan. 27, 2020) ("The Court finds most persuasive the line of cases that have held negligence claims against freight brokers are preempted under the FAAAA...."); *Zumba Fitness, LLC v. ABF Logistics, Inc.*, No. 2:15-CV-02151, 2016 WL 11478172, at *5 (W.D. Ark. Nov. 2, 2016) (granting broker partial summary judgment "[g]iven the robust body of case law interpreting the FAAAA's pre-emption clause broadly and its saving clause narrowly, and, more specifically, finding negligence claims against brokers to be pre-empted by § 14501(c)(1)"); *ASARCO LLC v. England Logistics Inc.*, 71 F. Supp. 3d 990, 1006-07 (D. Ariz. 2014) (holding FAAAA preempts negligence claims against brokers, barring safety exemption, explaining that "[h]olding a broker responsible for negligence on the instant facts would certainly have more than a tenuous, remote or peripheral effect on rates and services.").

Here, Plaintiff's negligence and gross negligence claims are extra-contractual and relate directly to Transplace's alleged services as a broker. Indeed, Plaintiff alleges that Transplace acted as broker to arrange for the transportation of the Cargo from Illinois to New Mexico. (Compl. ¶¶26, 32-39, 41.) To allow an extra-contractual claim or negligence claim related to brokerage services provided by Transplace would impact how Transplace, or any freight broker, performs its primary function of hiring motor carriers. Simply put, such claims would effectively supersede the FAAA and interfere with federal deregulation and Congressional intent. Therefore,

7

under well-established law, Plaintiff's claims against Transplace are preempted by the FAAAA and must be dismissed.

        **C.**     ***The Court Must Dismiss Plaintiff's Breach of Contract Claim.***

Plaintiff alleges that Transplace breached the Transportation Agreement attached to the Complaint as Exhibit N (the "Agreement"). However, any such claim against Transplace is not ripe, per the terms of the Agreement. The Agreement specifies at Paragraph 7a., "BROKER shall be ***secondarily*** liable for cargo claims in the event CARRIER does not timely pay claims in accordance with this Section 7." (Compl. ¶34, quoting the Agreement at Para. 7a.) (Emphasis added.) Per the plain language of the Agreement, any obligation by Transplace, the BROKER, to pay a cargo claim, is not triggered unless and until the CARRIER fails to pay timely a cargo claim. There is no allegation that the *motor carrier* did not pay Plaintiff's or Eaton's cargo claim. First, Plaintiff alleges that Eaton made a claim *with Transplace, not the motor carrier*.[2] (*Id*. ¶15.) Second, Plaintiff does not allege a claim was ever made with the carrier. (*See* Compl.)

Plaintiff cannot establish a breach of the Agreement by Transplace where there is no allegation that Transplace failed to fulfill its obligations under the terms of the Agreement. "To establish a breach of contract, the plaintiff must establish 'by a preponderance of the evidence that (1) a contract existed, (2) one party fulfilled his obligations, (3) the other party failed to fulfill his obligations and (4) damages resulted from that failure." *Quest Workforce Solutions, L.L.C. v. Job1USA, Inc*., 75 N.E.3d 1020, 1030 (Ohio 6th Dist. Ct. App. 2016) (quoting *Blake Homes, Ltd. v. First Energy Corp*., 173 Ohio App.3d 230 (Ohio 6th Dist. Ct. App. 2007). Here, Transplace's contractual obligation was not triggered as there is no allegation that the carrier failed to pay Plaintiff's cargo claim. *See NL Corp., Inc. v. Seneca Spec. Ins. Co*., 2021 WL 1828100, 2021-Ohio 1610, at *5 (Ohio 2d Dist. Ct. App., May 7, 2021) (finding that the subject

8

24560475 v1

insurance contract required a filed lawsuit to trigger the contractual duty to defend plaintiff. There was no lawsuit filed, and therefore no contractual obligation to reimburse plaintiff for an attorney that plaintiff voluntarily retained.) Plaintiff fails to state a claim for breach of contract against Transplace, and that claim must be dismissed.

> **D.** ***The Court Must Dismiss the Claims for "Breach of Contract of Common Carriage" and Violation Under 49 U.S.C. §14704" Because Transplace is a Broker, not a Motor Carrier***

Even if the FAAAA did not preempt the Plaintiff's state law claims against Transplace and Plaintiff's contract claim did not fail, Plaintiff's motor carrier-based claims[3] or any Carmack Amendment claims against Transplace fail as Transplace did not act as a motor carrier with respect to the Cargo. Transplace's alleged actions as a broker are the basis for Plaintiff's alleged claims. (*See* Compl. ¶¶26, 32-39, 41; Compl. Exhibit N.) The Agreement defines clearly Transplace's duties and obligations as a *broker* to broker and arrange for transportation on behalf of Eaton. (*Id.,* Exhibit N, Paragraph 5.) The Carmack Amendment does not apply to brokers, such as Transplace.

---

[2] Transplace denies that it received any claim from Eaton.
[3] Plaintiff's fourth claim is for "Breach of Contract of Common Carriage," and Plaintiff goes on to cite the Carmack Amendment "or federal common law." As set forth below, the Carmack Amendment is comprehensive and the proper cause of action against a carrier, which Transplace is not. Plaintiff's fifth claim is for "Violation Under 49 U.S.C. §14704." "49 U.S.C. § 14704(a) authorizes private actions for damages and injunctive relief to remedy at least some violations of the Motor Carrier Act and its implementing regulations." *Owner-Operators Indep. Drivers Ass'n, Inc. v. New Prime Inc.*, 192 F.3d 778 (8th Cir. 1999) (plaintiff argued that the statute created an express private right of action to remedy violations of the *Truth–in–Leasing regulations*. The court found that the statute created a private right of action for "some violations of the Motor Carrier Act and its implementing regulations.") Here, Plaintiff does not state what, if any, violations of the Motor Carrier Act are at issue, other than that Transplace allegedly disregarded its obligations and "duties and obligations to keep and provide for the proper safety of the shipment." Again, Transplace is a broker, and Transplace's duties and obligations are set forth in the Agreement at Paragraph 5, "to arrange transport" to "undertake brokerage of shipping on behalf of SHIPPER with responsible carriers." (Compl. Exhibit N.)

9

The Carmack Amendment only applies to "motor carriers and freight forwarders." 49 U.S.C. § 14706(a)(1). "The statute that defines 'carrier' for the purpose of the Carmack Amendment distinguishes between a carrier and a broker, which it defines as 'a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.' " *Active Media Servs, Inc. v. CAC Am Cargo Corp.*, No. 08-Cv-301, 2012 WL 4462031, at *2 (S.D.N.Y. Sept. 26, 2012) (quoting 49 U.S.C. § 13102(2)). "Accordingly, courts have repeatedly held that the Carmack Amendment does not apply to brokers." *Id.* (citing *Commercial Union Ins. Co. v. Forward Air, Inc.,* 50 F.Supp..2d 255, 257 (S.D.N.Y.1999); *5KLogistics,* 659 F.3d at 335–36; *Chubb Group of Ins. Companies v. H.A. Transp. Systems, Inc.,* 243 F.Supp.2d 1064, 1068–69 (C.D.Cal.2002); *Travelers Ins. v. Panalpina Inc.,* No. 08–C–5864, 2010 WL 3894105, at *4 (N.D.Ill. Sept.30, 2010)); *see also, CGU International Ins., PLC v. Keystone lines Corp.,* No. C-02-3751 SC, 2004 WL 1047982 (N.D. Cal May 5, 2004) (finding that defendant acted as a broker and therefore was not liable for goods negligently damaged in transport); *New Prime, Inc. v. Professional Logistics Mgmt. Co.*, 28 S.W.3d 898 (Mo. Ct. App. 2000) (noting that if plaintiff were found to be a broker, it would be entitled to judgment); *Prof'l Communs., Inc. v. Contract Freighters, Inc.*, 171 F. Supp. 2d 546 (D. MD 2001); *Custom Cartage, Inc. v. Motorola, Inc.*, No. 98C5182, 1999 WL 89563 (N.D. Ill. Feb. 16, 1999, and 1999 WL 965686 (N.D. Ill. Oct. 15, 1999)). Thus, the Court must dismiss the Fourth and Fifth Causes of Action of the Complaint for failure to state a claim against Transplace, a broker.

**E.  *The Court Must Dismiss the Complaint As Preempted By The Carmack Amendment.***

If Transplace did act as a motor carrier, *which Transplace expressly denies*, then the Court must dismiss Plaintiff's claims state law claims against Transplace because the Carmack Amendment preempts state common law causes of action. The Carmack Amendment is also part of a comprehensive and uniform legislative enactment, and courts hold uniformly that a shipper's state common law causes of action against a carrier are *completely preempted* by the Carmack Amendment's comprehensive legislative scheme.

The Carmack Amendment defines the parameters of carrier liability for loss and damage to goods transported under interstate bills of lading. The Amendment is set forth in 49 U.S.C. § 14706 (formerly 49 U.S.C. § 11707) and states, in relevant part:

> A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. *The liability imposed under this paragraph is for the actual loss or injury to the property* ….

49 U.S.C. §14706 (emphasis added). This statute represents a conscious balancing of shipper and carrier interests. Under the Carmack Amendment, shippers are relieved of the burden of meeting traditional tort requirements (*i.e.*, proving which of several potential carriers caused their loss, or whether the carrier's conduct actually or proximately caused the loss). The Amendment replaces tort principles with a type of strict carrier liability. A shipper must only prove three elements to establish a right to relief under the Carmack Amendment:

> (1) the goods were in good condition upon receipt by the carrier;
> (2) the goods were not delivered or arrived damaged; and
> (3) the amount of damages measured by "actual loss."

11

24560475 v1

*Missouri Pacific R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964); s*ee also, Reider v. Thompson*, 339 U.S. 113, 119 (1950) (Carmack Amendment relieves shipper of the burden of searching for the particular carrier at fault). Carriers gained the certainty in the application of a nationally uniform liability regime. In other words, rules regarding both proof of loss or damage and carrier liability are now universally applied, regardless of what route a shipment might take. *See Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir. 1987). In addition, the general public benefits from this legislative compromise as a result of lower, more stable transportation rates, and a uniform liability scheme.

It is well-settled that the Carmack Amendment preempts a shipper's state common law and statutory causes of action. In *Adams Express Co. v. Croninger*, 226 U.S. 491 (1913), the United States Supreme Court established that the Carmack Amendment preempts all state law regulation with respect to the subject of interstate common carriers. The Court stated: "Almost every detail of the subject is covered so completely that there can be no rational doubt that Congress intended to take possession of the subject, and supersede all states regulations with reference to it." *Id.* at 505-06. *Adams Express* thus held that claims arising out of loss or damage to property transported in interstate commerce are governed by the Carmack Amendment and that all state law claims are preempted. *See id*. The Court explained that the primary objective of the statute is the establishment of a uniform national policy governing the liability of interstate carriers:

> [T]his branch of interstate commerce was being subjected to such a diversity of legislative and judicial holding that it was practically impossible for a shipper engaged in a business that extended beyond the confines of his own state, or a carrier whose lines were extensive, to know, without considerable investigation and trouble, and even then oftentimes with but little certainty, what would be the carrier's actual responsibility as to the goods delivered to it for

12

>transportation from one state to another. The congressional action has made an end to this diversity, for the national law is paramount and supersedes all state laws as to the rights and liabilities and exemptions created by such transactions.

*Id.* at 505 (citation and quotation omitted); *see also Georgia, Florida and Alabama Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916) (holding that the Carmack Amendment is "comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation …"); *Thurston Motor, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 535 (1983) *quoting Louisville & Nashville R. Co. v. Rice*, 247 U.S. 201, 203 (1918) ("'As to interstate shipments … the parties are held to the responsibilities imposed by the federal law, to the exclusion of all other rules of obligation.'"); *New York, N.H. & H.R. Co. v. Nothnagle*, 346 U.S. 128, 131 (1953); *Charleston & Western Carolina Ry. Co. v. Yarnville Furniture Co.*, 237 U.S. 597, 604 (1915) (holding that preemption applies not only to state law claims that directly contradict the procedures or remedies set out in Carmack, but also encompasses state causes of action that supplement Carmack relief); *Atchison T. & S.F. Ry. v. Harold*, 241 U.S. 371, 378 (1916).

The federal circuit courts of appeals that considered the Carmack Amendment's preemptive scope have held unanimously that the Carmack Amendment's broad preemptive effect extends to all state law claims arising from the transportation and delivery of goods, whether such claims contradict or supplement Carmack Amendment remedies. "The Supreme Court of the United States has described the preemptive effect of the Carmack Amendment very broadly." *Smith v. United Parcel Service*, 296 F.3d 1244, 1249 (11th Cir. 2002) (citing *Blish Milling Co.,* 241 U.S. at 196, 36 S.Ct. at 544). The Carmack Amendment "embraces 'all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation.'" *Id. (*affirming the district court's dismissal because plaintiffs based their claims

13

on allegations concerning the defendant's failure to provide transportation and delivery services, the Carmack Amendment preempted plaintiffs' claims); *see also W.D. Lawson & Company v. Penn. Central Company*, 456 F.2d 419, 421 (6th Cir. 1972); *Rini v. United Van Lines, Inc.*, 104 F.3d 502, 506 (1st Cir. 1997); *Cleveland v. Beltman North American Van Lines Co.*, 30 F.3d 373, 379 (2d Cir. 1994); *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 706-07 (4th Cir. 1993); *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 306-07 (5th Cir. 1993); *Hughes Aircraft v. North American Van Lines*, 970 F.2d 609, 613 (9th Cir. 1992); *Underwriters at Lloyds of London v. North American Van Lines*, 890 F.2d 1112, 1121 (10th Cir. 1989).

As a Court in this District concluded, "state law causes of action against an interstate motor carrier for fraud, tort, intentional and negligent infliction of emotional stress, breach of contract, breach of implied warranty, breach of express warranty and state deceptive practices acts, etc. are pre-empted" by the Carmack Amendment. *Automated Window Machinery, Inc. v. McKay Ins. Agency, Inc.,* No. 5:03CV1164, slip op. at 2 (N.D. Ohio March 31, 2004) (Gallas, M.J.); *see also VIS Sales, Inc. v. Old School Transport, LLC*, No. 5:07CV2026, slip op. at 3 (N.D. Ohio Aug. 20, 2007) (Dowd, J.) (citing *Adams Express Co.*, 226 U.S. at 505-06; *Am. Synthetic Rubber Corp. v. Louisville & Nashville Ry. Co*., 442 F.2d 462, 466 (6th Cir. 1970); *W.D. Lawson & Co. v. Penn. Cent. Co*., 456 F.2d 419 (6th Cir. 1972); *Toledo Ticket Co. v. Roadway Exp., Inc.*, 133 F.3d 439, 441 (6th Cir. 1998)). Moreover, Plaintiff's state common law claims "do[es] not magically translate" to federal claims under the Carmack Amendment. *Carr v. Olympia Moving & Storage* (June 6, 2006), No. 1:06cv00679, (Wells, J.) (N.D. Ohio)

This Circuit rendered yet another decision supporting this proposition of law. In *Hemsath v. Kendrick*, No. 1:06-CV-04, 2006 WL 1000189 (S.D. Ohio, April 14, 2006), the Court stated:

> In the Sixth Circuit, the issue of the scope of the preclusive effect of the Carmack Amendment has been conclusively resolved in a manner that is fatal

14

> to Plaintiff's state law claims. In 1970, the Court of Appeals held that "when damages are sought against a common carrier for failure to properly perform, or for negligent performance of, an interstate contract of carriage, the Carmack Amendment governs." *American Synthetic Rubber Corp. v. Louisville & Nashville Ry. Co.*, 422 F.2d 462, 466 (6th Cir. 1970). That remains the law in this Circuit, as subsequent reported decisions from within the Circuit demonstrate. *See Carousel Nut Products, Inc. v. Milan Express Co., Inc.*, 767 F. Supp. 2d 142, 143 (W.D. Ky 1991).

*Hemsath*, 2006 WL 1000189 at *1.

Furthermore, Ohio courts recognize the Carmack Amendment's complete preemption of all state law and common law claims. *Bowersmith v. United Parcel Service, Inc.*, 166 Ohio App. 3d 22 (Ohio App. 3 Dist. 2006) (determining motion to dismiss is appropriate when complaint alleges only state law claim and no claim under Carmack Amendment). The *Bowersmith* court stated "Section 14706 [the Carmack Amendment] preempts state-law claims against common carriers." *Id*. at 28.

In short, if Transplace did act as a motor carrier, which Transplace denies, the doctrine of complete preemption eliminates any state law claims against carriers and preserves the uniform treatment of the carrier-shipper relationship. Consequently, this Court must dismiss any state law claims for failure to state a claim upon which relief can be granted. *See, Smith*, 296 F.3d 1244, 1249 (affirming district court's dismissal of state law tort claims on the basis of Carmack Amendment preemption).

**II.    CONCLUSION**

Defendant Uber Freight US LLC, formerly known as Transplace Texas, L.P., respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety as Plaintiff fails to state any claims against Transplace. First, Plaintiff's negligence claims are preempted by federal law, regardless of whether (1) Plaintiff alleges that Transplace is a broker, which it is, and in which case Plaintiff's claims are preempted by the FAAAA and by the inapplicability of the Carmack

15

Amendment to brokers, or (2) Plaintiff alleges that Transplace is a motor carrier, in which case Plaintiff's claims are preempted by the Carmack Amendment. Second, Plaintiff has failed to state a claim for breach of contract against Transplace. Finally, Transplace is a broker, not a motor carrier.

|  |  |
|---|---|
| **OF COUNSEL:**<br><br>**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP** | Respectfully submitted,<br><br>*/s/ Clare R. Taft*<br>ERIC LARSON ZALUD (0038959)<br>CLARE R. TAFT (0076570)<br>**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**<br>127 Public Square, Suite 4900<br>Cleveland, Ohio 44114<br>Telephone: (216) 363-4500<br>Facsimile: (216) 363-4588<br>Email: ezalud@beneschlaw.com<br>     ctaft@beneschlaw.com<br><br>*Attorneys for Defendant Uber Freight US LLC (formerly known as Transplace Texas, L.P.)* |

## **LOCAL RULE 7.1(f) CERTIFICATION**

The undersigned hereby certifies that this case has not been assigned to a Track and that this Memorandum complies with the page limitations set forth in Local Rule 7.1.

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was filed electronically on the 24th day of June 2024 in accordance with the Court's Electronic Filing Guidelines.  Notice of this filing will be sent to all parties by operation of the Court's Electronic Filing System.  Parties may access this filing through the Court's Filing System.

*/s/ Clare R. Taft*
CLARE R. TAFT (0076570)